## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| T&D CORPORATION d/b/a ARCHER HOME CENTER, | ) ) ) | No. |
| Plaintiff, | ) ) ) | CLASS ACTION COMPLAINT |
| v. | ) ) | |
| TECUMSEH PRODUCTS COMPANY, TECUMSEH COMPRESSOR COMPANY, TECUMSEH DO BRASIL LTDA, TECUMSEH DO BRASIL USA, LLC, WHIRLPOOL CORPORATION, WHIRLPOOL, S.A., EMBRACO NORTH AMERICA, INC., DANFOSS A/S, DANFOSS COMMERCIAL COMPRESSORS LTD., DANFOSS, INC., DANFOSS SCROLL TECHNOLOGIES, LLC, DANFOSS TURBOCOR COMPRESSORS, INC., APPLIANCES COMPONENTS COMPANIES, SPA, ACC USA LLC, PANASONIC CORPORATION and PANASONIC CORPORATION OF NORTH AMERICA, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | | |

Plaintiff T&D Corporation d/b/a Archer Home Center, by its undersigned attorneys,

individually and on behalf of all others similarly situated, files this class action complaint against

the defendants named herein for treble damages and other relief under the antitrust laws of the

Untied States and, alleges as follows based upon personal knowledge with respect to its own

acts, and upon the investigation of counsel, information and belief, and publicly available

information with respect to all other matters:

## <u>NATURE OF CLAIMS</u>

1.      This antitrust class action is brought on behalf of Plaintiff and all individuals and

entities who purchased compressors and/or compressor products in the United States directly

from defendants, their predecessors or their controlled subsidiaries from January 1, 1996 through

February 16, 2009 (the "Class Period"). "Compressors" as used herein are compressors used in refrigeration, air conditioning and cooling applications. "Compressor Products" as used herein are Compressors as well as products manufactured, marketed and/or sold by the defendants that contain a Compressor manufactured by one of the defendants. Plaintiff alleges that during the Class Period, the defendants engaged in a combination and conspiracy, the purpose and effect of which was to artificially fix, raise, maintain or stabilize the price of Compressor Products sold in the United States.

## JURISDICTION AND VENUE

2.      Plaintiff brings this action seeking injunctive relief, treble damages, and the costs of this litigation, including reasonable attorneys' fees, for injuries sustained by Plaintiff and members of the class as a result of defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged in this Complaint.

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a) and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26.

4.      Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391(b) and (c) because at least one of the defendants resided, transacted business, and was found, or had agents in this district during the Class Period; and because a substantial portion of the affected interstate trade and commerce described herein has been carried out in this district.

## PARTIES

5.      Plaintiff T & D Corporation is an Iowa corporation with its principal place of business in Adel, Iowa. Plaintiff purchased Compressor Products directly from one or more defendants during the Class Period, and was damaged as a result of defendants' unlawful

conduct.  The prices Plaintiff paid for the Compressor Products sold by defendants were, as a result of the conspiracy alleged herein, higher than they otherwise would have been, and Plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.

6.    Defendant Tecumseh Products Company ("Tecumseh") is a Michigan corporation with its principal place of business in Ann Arbor, Michigan.  During the Class Period, defendant Tecumseh, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States.  Tecumseh is one of the world's largest producers of Compressor Products.  Its products are used in residential and commercial refrigerators, freezers, water coolers, dehumidifiers, window air conditioning units and residential and commercial central system air conditioners and heat pumps.  Tecumseh offers its products to original equipment manufacturers and aftermarket distributors through sales staff and independent sales representatives in North America, South America, Europe, the Middle East and Asia.

7.    Defendant Tecumseh Compressor Company is a Delaware corporation with its principal place of business in Ann Arbor, Michigan.  Tecumseh Compressor Company is a wholly-owned subsidiary of defendant Tecumseh Products Company.  Defendant Tecumseh Compressor Company, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

8.    Defendant Tecumseh do Brasil, Ltda ("Tecumseh Brasil") is a Brazilian corporation with its principal place of business in Sao Carlos, Brazil.  Tecumseh Brasil is wholly-owned by defendant Tecumseh Products Company.  Defendant Tecumseh Brasil, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in

this district and the United States during the Class Period.  Tecumseh Brasil is Tecumseh's largest foreign manufacturing source.

9.    Defendant Tecumseh do Brasil USA, LLC ("Tecumseh Brasil USA") is a Delaware limited liability company, which is wholly-owned by defendant Tecumseh Brasil. Defendant Tecumseh Brasil USA, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

10.    Defendant Whirlpool Corporation ("Whirlpool") is a Delaware corporation with its principal place of business in Benton Harbor, Michigan.  Whirlpool's compressor business has sales of $1.5 billion annually.  In 2008, sales of compressors represented approximately 6% of Whirlpool's global net sales.  Defendant Whirlpool, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

11.    Defendant Whirlpool S.A. f/k/a Embraco S.A. ("Whirlpool S.A.") is a Brazilian corporation with its principal place of business in Joinville, Brazil.  Defendant Whirlpool S.A. is a wholly-owned subsidiary of defendant Whirlpool and has been since approximately 1996. Prior to May 2006, Whirlpool S.A. operated under the name Embraco S.A. Defendant Whirlpool S.A. manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.  According to its website, defendant Whirlpool S.A. has been selling Compressor Products that it manufacturers in Brazil in the United States since at least 1978.

12.    Defendant Embraco North America, Inc. ("Embraco NA") is a Delaware corporation with its principal place of business at Suwanee, Georgia.  Defendant Embraco NA is a wholly-owned subsidiary of defendant Whirlpool, S.A. which in turn is wholly-owned by

defendant Whirlpool. Defendant Embraco NA marketed and/or sold Compressor Products in this district and the United States during the Class Period. According to Whirlpool S.A.'s website, Embraco NA is responsible, *inter* alia, for selling Whirlpool S.A.'s products in North America.

13.     Defendant Danfoss A/S is a Danish corporation headquartered in Nordborg, Denmark. Defendant Danfoss A/S, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period through its Refrigeration and Air-Conditioning Division.

14.     Defendant Danfoss Inc. is a Delaware corporation with its principal place of business in Baltimore, Maryland. Defendant Danfoss Inc. is an indirectly owned subsidiary of defendant Danfoss A/S. Defendant Danfoss Inc. manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

15.     Defendant Danfoss Commercial Compressors, Ltd. is a Delaware corporation with its principal place of business at Lawrenceville, Georgia. Defendant Danfoss Commercial Compressors, Ltd. either directly or indirectly, is a wholly-owned subsidiary of defendant Danfoss A/S. Defendant Danfoss Commercial Compressors, Ltd. by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

16.     Defendant Danfoss Scroll Technologies, LLC f/k/a Scroll Technologies, LLC is a Delaware limited liability company with its principal place of business in Arkadelphia, Arkansas. Defendant Danfoss Scroll Technologies, LLC, either directly or indirectly, is wholly-owned by defendant Danfoss A/S. Defendant Danfoss Scroll Technologies, LLC, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

17.     Defendant Danfoss Turbocor Compressors, Inc. ("Danfoss Turbocor") is a Delaware corporation with its principal place of business in Tallahassee, Florida. Defendant Danfoss Turbocor, either directly or indirectly, is a wholly-owned subsidiary of defendant Danfoss A/S. Defendant Danfoss Turbocor manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

18.     Defendant Appliances Components Companies SpA ("ACC") is an Italian corporation with its principal place of business located in Pordenone, Italy. Defendant ACC manufactures its Compressor Products in Italy, Austria and China. Defendant ACC, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

19.     Defendant ACC, USA, LLC ("ACC USA") is a limited liability company with its principal place of business in Madison, Alabama, which is wholly-owned by defendant ACC. Defendant ACC USA manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

20.     Defendant Panasonic Corporation f/k/a Matsushita Electric Industrial Co., Ltd. ("Panasonic") is a Japanese corporation with its principal place of business in Osaka, Japan. During the Class Period, defendant Panasonic, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

21.     Defendant Panasonic Corporation of North America is a Delaware corporation with its principal place of business in Secaucus, New Jersey and is a wholly-owned subsidiary of Panasonic Corporation. Defendant Panasonic Corporation of North America manufactured,

marketed and/or sold Compressor Products in this district and the United States during the Class Period.

22.    Whenever this complaint refers to any act, deed or transaction of any corporation or limited liability company, the allegation means that the corporation or limited liability company engaged in the act, deed or transaction by or through its officers, directors, agents, employees, shareholders or representatives while they were actively engaged in the management, direction, control or transaction of the business or affairs of the corporation or limited liability company.

## CO-CONSPIRATORS

23.    Various other persons, firms and corporations, not named as defendants in this Complaint, have participated as co-conspirators with defendants in the violations alleged herein, and have aided, abetted and performed acts and made statements in furtherance of the conspiracy.

## INTERSTATE TRADE AND COMMERCE

29.    During the Class Period, defendants produced, manufactured, distributed and sold Compressor Products through the means of interstate commerce in a continuous and uninterrupted flow to customers located throughout the United States.  Plaintiff and other members of the class located throughout the United States purchased Compressor Products directly from defendants and their co-conspirators, who received millions of dollars from such interstate trade and commerce.

30.    Among other unreasonable restraints on interstate trade and commerce, defendants' combination and conspiracy artificially raised the price of Compressor Products and

deprived Plaintiff and the class of the benefits of free and open competition in the market for Compressor Products throughout the United States.

## THE COMPRESSOR MARKET AND INDUSTRY

31.     A Compressor is a device that compresses a refrigerant gas.  Compressors are part of the system that creates the cold air that keeps food fresh or frozen by compressing cooling fluid.  When the gas is later permitted to expand, it absorbs and transfers heat, producing a cooling effect, which forms the basis for a wide variety of refrigeration and air conditioning products.

32.     Typically, Compressors are used in residential and commercial refrigerators, freezers, dehumidifiers, window air conditioning unites, central air conditioners and heat pumps, commercial vending machines and water coolers.

33.     Compressors are called often "hermetic" Compressors because the electric motor and compression mechanism do not work in the normal atmosphere, but run sealed within the atmosphere of the refrigerant vapor.

34.     Typically, there are no serviceable parts inside a compressor.  Therefore, once a compressor fails, the only option is to replace it.

35.     Compressors are homogenous commodity products.  One defendant's Compressor can be used in place of another defendant's Compressor in the same application.  Compressors supplied by one producer may be readily substituted for Compressors supplied by any other supplier.  Because Compressors are homogenous commodity products, purchasers of Compressor Products make purchase decisions based primarily on price.  However, due to defendants' anticompetitive conduct as alleged herein, defendants have been able to fix, raise, maintain and stabilize the price of Compressor Products at artificially high levels.

36.     Demand for Compressors is highly inelastic.  Thus, producers of Compressors have been able to raise their prices without losing sales revenues.  There are also no product substitutes for Compressors.  Demand inelasticity is a market condition which facilitates the existence of an anti-competitive conspiracy, and facilitated the existence of the conspiracy alleged herein.

37.     Tight credit and downturn in the global economy have put a damper on appliance sales.  According to a *Dow Jones Newswires* report, industry observers say many Compressor manufacturers have been reluctant to slash their prices to generate order volume during the downturn.

38.     There are substantial barriers to entry into the Compressors' market.  A new entrant into the business would have to incur multimillion dollar costs, including manufacturing plant and equipment, energy, transportation, distribution infrastructure, skilled labor and long-standing customer relationships.  With such barriers, those few firms who have available resources and significant start-up capital to enter the market and benefit from economies of scale are able to reduce their average cost by producing more output.  The firm existing in the market have the motivation to keep other firms out in order to keep their share up, and to also collude in order to keep prices up.

39.     The market for Compressors is highly concentrated.  A small number of products control a major share of the Compressor market.  For example, defendant Whirlpool and its subsidiaries are estimated to control as much as 25% of the global market for refrigerator compressors and 30% of the market share in Europe.  Collectively, defendants named herein control a substantial percentage of the Compressor market.  This concentration makes the Compressor market conducive to price-fixing.

## GOVERNMENT ANTITRUST INVESTIGATIONS

40.    In mid-February, the media reported that a number of Compressor manufacturers were under investigation for potential antitrust violations.  A joint operation, known as "Operation Degree Zero," was launched by the United States Department of Justice, the Brazilian authorities and the European Commission to investigate an alleged cartel among the manufacturers of Compressors.

41.    According to sources from the Brazilian government, searches and seizures made in connection with Operation Degree Zero, "yielded remarkable evidence" of the cartel, including the exchange of sensitive information to eliminate competition.

42.    On or about February 17, 2009, the media reported that Brazilian competition authorities raided the offices of Whirlpool S.A. in connection with its potential involvement in a global price fixing and market allocation conspiracy in the market for Compressor Products. News articles reported that the Brazilian authorities seized bags of computers and laptops. Following that raid, the Brazilian police, which helped conduct the raid, stated, "the initial investigation shows that the companies involved had agreed, through their managers, to fix prices and also exchanged commercially sensitive information, harming free competition and consumers."  Moreover, the Brazilian policy noted that the companies involved in the conspiracy had been exchanging confidential information for more than 12 years.  Finally, it was reported that the investigation began near the end of 2008 when one of the companies advised authorities of the cartel in exchange for administrative and criminal immunity.

43.    The Brazilian press reports that 2008 losses from the cartelization of hermetic Compressors could range from BRL68 million to BRL125 million, or US$230 million to US$425 million.  According to Ana Paula Martinez, Director of Brazil's Department of

44.     On February 18, 2009, the European Commission ("EC"), the European Union's antitrust watchdog, revealed in a press release that on February 17, 2009, the EC carried out unannounced inspections at the premises of Compressor makers in several member states for possible breach of antitrust rules, which prohibit practices such as price fixing and customer allocation.  The inspections were carried out in several EU member states including Denmark, Italy and Germany.

45.     On February 19, 2009, the United States Department of Justice ("DOJ") confirmed that it is investigating possible antitrust violations in the multibillion-dollar refrigeration compressor industry.  DOJ spokeswoman Gina Talamona confirmed that the DOJ is "coordinating with other foreign competition authorities."  Additionally, the DOJ confirmed the existence of a grand jury and that grand jury subpoenas had been issued to several defendants.

46.     Whirlpool, on February 19, 2009 in an SEC filing, stated "[o]n February 17, 2009, we received a grand jury subpoena from the U.S. Department of Justice requesting documents relating to an antitrust investigation of the global compressor industry.  Whirlpool subsidiaries in Brazil and Italy were visited on the same day by competition authorities seeking similar information."

47.     Defendant Tecumseh also disclosed that it had received subpoenas from antitrust authorities in the U.S. and Brazil regarding an investigation into possible price fixing in the Compressor Products market.

48.    Danfoss A/S stated that offices in the United States and Europe were raided by antitrust regulators as part of an investigation into possible price-fixing in the Compressor Product market.

## FRAUDULENT CONCEALMENT

49.    Throughout the Class Period, defendants and their co-conspirators fraudulently concealed their unlawful conspiracy, combination and contracts form Plaintiff and members of the class.

50.    Plaintiff and other members of the class had no knowledge of defendants' unlawful self-concealing conspiracy and could not have discovered the contract, combination or conspiracy at an earlier date by the exercise of due diligence because of the deceptive practices and secrecy techniques employed by defendants to avoid detection of, and to fraudulently conceal, their contract, combination or conspiracy.

51.    Because the contract, combination or conspiracy was kept secret by defendants, Plaintiff and other class members, despite exercising due diligence, were unaware that prices of Compressor Products were secretly agreed upon.

52.    As a result of defendants' and their co-conspirators' fraudulent concealment of their conspiracy, the applicable statute of limitations governing Plaintiff's right of action has been tolled.

## CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on its own behalf and on behalf of all others similarly situated.  The class is defined as:

>    All individuals or entities (excluding governmental entities,
>    Defendants, their subsidiaries and any co-conspirators) who

purchased Compressor products in the United States directly from any of the defendants or any predecessor, subsidiary or affiliated thereof at any time during the period from January 1, 1996 through February 16, 2009.

54.    The members of the class are so numerous and geographically dispersed across the country that joinder of all members of the class would be impracticable.  Due to the nature of the claims asserted here, Plaintiff believes that members of the class are located throughout the United States.  The exact number of class members is unknown by Plaintiff at this time, but Plaintiff believes that the class is in the thousands and their identities can only be discovered through inspection of defendants' records, which are or should be readily available.

55.    Plaintiff's claims are typical of the members of the class because Plaintiff and all members of the class were damaged by the same wrongful conduct of defendants alleged herein.  Plaintiff and the class purchased Compressor Products at artificially maintained, non-competitive prices established by the actions of defendants and their unnamed co-conspirators in connection with the wrongful conduct alleged herein.

56.    Plaintiff will fairly and adequately protect the interests of the class.  The interests of Plaintiff are coincident with, and not antagonistic to, those of the class.  In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

57.    Questions of law and fact common to the members of the class predominate over questions that may affect only individual members, if any, in that defendants have acted on grounds generally applicable to the entire class.  Among the questions of law and fact common to the class are:

    a.    Whether defendants conspired with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain and/or stabilize the prices of Compressor Products;

    b.    Whether defendants' conduct violated Section 1 of the Sherman Act;

    c.    The existence, duration and illegality of the contract, combination or conspiracy alleged in this Complaint;

    d.    Whether defendants took affirmative steps to conceal the contract, combination or conspiracy alleged herein;

    e.    The effect upon and the extent of injuries sustained by Plaintiff and members of the class and the appropriate type and/or measure of damages; and

    f.    Whether Plaintiff and the class are entitled to declaratory and/or injunctive relief.

58.    Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by certain class members, who could not otherwise afford to individually litigate an antitrust claim against large corporate defendants.

59.    Defendants have acted, and refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

60.    The class is readily definable and is one for which records likely exist in the files of defendants and their co-conspirators.

61.    Plaintiff is now aware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT I**
**VIOLATION OF SECTION 1 OF THE SHERMAN ACT**

62.    Beginning at least as early as January 1, 1996, and continuing thereafter to February 16, 2009, defendants and their co-conspirators engaged in an unlawful contract, combination or conspiracy with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain and/or stabilize the prices of Compressor Products in a *per se* violation or unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

63.    The conspiracy alleged herein consisted of a continuing agreement, understanding and concert of action by defendants and their co-conspirators, the substantial terms of which were to raise, fix or maintain the prices of Compressor Products sold in the United States and worldwide at artificially high and non-competitive levels.

64.    In furtherance of the unlawful conspiracy, upon information and belief, each of the defendants and their co-conspirators have committed overt acts including, *inter alia*:

a.    Meeting or otherwise communicating to discuss the prices of Compressor Products sold in the United States and worldwide;

b.    Agreeing to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize prices of Compressor Products sold in the United States and worldwide;

c.    Meeting or otherwise communicating with co-conspirators to keep the existence of the conspiracy unknown so as to foster the illegal anticompetitive prices;

     d.   Refraining from competition by refusing to offer Compressor Products at prices below the agreed upon fixed price; and

     e.   Selling Compressor Products at the agreed upon prices.

65.     The unlawful contact, combination or conspiracy alleged above had, *inter alia*, the following effects:

     a.   Prices charged by defendants and their co-conspirators to Plaintiff and the members of the class for Compressor Products were maintained at artificially high and non-competitive levels; and

     b.   Plaintiff and other members of the Class were required to pay more for Compressor Products than they would have paid in a competitive marketplace, unfettered by defendants' and their co-conspirators' collusive and unlawful price-fixing.

66.     During and throughout the Class Period, Plaintiff and members of the class directly purchased Compressor Products in the United States.

67.     Plaintiff and the other class members paid more for Compressor Products that they purchased than they would have paid under conditions of free and open competition.

68.     As a direct and proximate result of the illegal combination, contract or conspiracy alleged herein, Plaintiff and the members of the class were injured and financially damaged in their businesses and property in amounts that are not presently determinable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that:

a.     The Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed class representative, and that Plaintiff's counsel be appointed as counsel for the class;

b.     The contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act of 1890, 15 U.S.C. § 1 and Sections 4 and 16 of the Clayton Act, 15 U.S. C §§ 15 and 26;

c.     Plaintiff and the class recover compensatory damages, as provided by law, determined to have been sustained by each of them, and that joint and several judgments in favor of Plaintiff and the class, respectively, be entered against defendants, in an amount to be trebled in accordance with antitrust laws, and each of them;

d.     Plaintiff and the class recover their costs of this suit, including reasonable attorneys' fees, expert fees, and accountant's fees, as provided by law;

e.     Plaintiff and the class be awarded pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law;

f.     Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner, continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

g.      Plaintiff and the class be granted such other, further relief as the nature of

the case may require or as may seem just and proper to this Court under the

circumstances.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully

demands a trial by jury.

DATED:  March 13, 2009

Respectfully submitted,

/s/ Andrew Volk                    _

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman, Esq.
Anthony D. Shapiro, Esq.
Andrew Volk, Esq.
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Phone: (206) 623-7292
Fax: (206) 623-0594
E-mail:   steve@hbsslaw.com
          tony@hbsslaw.com
          andrew@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Elizabeth A. Fegan, Esq.
820 North Blvd., Suite B
Oak Park, IL 60301
Phone: (708)776-5604
Fax: (708) 776-5601
E-mail:  beth@hbsslaw.com

**HUDSON, MALLANEY & SHINDLER, P.C.**
J. Barton Goplerud, Esq.
5015 Grand Ridge Dr.
Suite 100
West Des Moines, IA 50265
Phone: (515) 223-4567
Fax: (515) 223-8887
E-mail:  jbgoplerud@hudsonlaw.net